NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAULA MALIANDI, <br><br> Plaintiff, <br><br> v. <br><br> MONTCLAIR STATE UNIVERSITY, <br><br> Defendant. | Civil Action No. 14-01398 (SRC) <br><br> **OPINION & ORDER** |

**CHESLER**, District Judge

Plaintiff Paula Maliandi ("Plaintiff") alleges she was wrongfully terminated from her job with Defendant Montclair State University ("MSU" or "the University"), in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654 and New Jersey's Law Against Discrimination ("LAD"), N.J. Stat. Ann. §§ 10:5-1 to -49. Instead of filing an Answer, MSU now moves to dismiss the Complaint on Eleventh Amendment sovereign immunity grounds. [Docket Entry 5.] MSU brings its motion pursuant to Federal Rule of Civil Procedure 12(b)(1), but because the motion raises a state sovereign immunity affirmative defense, Plaintiff need not persuade the Court as to the existence of subject matter jurisdiction; instead, it is MSU's burden to demonstrate that immunity lies and jurisdiction is absent. Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999).

The parties agree that whether MSU has successfully carried this burden focuses on the question of whether or not MSU should be considered an "alter ego" or "arm" of the State of New Jersey such that it would be immune from suit in federal court. Bowers v. v. Nat'l

Collegiate Athletic Assoc., 475 F.3d 524, 545 (3d Cir. 2007) ("Although the language of the Eleventh Amendment refers only to 'States,' the Supreme Court has held that the immunity extends to entities that are considered arms of the state."). This question, in turn, requires the Court to apply and weigh the factors enunciated in Fitchik v. N. J. Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989) (*en banc*). These include: "(1) whether the payment of the judgment would come from the state, (2) what status the entity has under state law, and (3) what degree of autonomy the entity has." Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006) (citing Fitchik, 873 F.2d at 659). The Third Circuit has stated that the three Fitchik factors should be treated as "co-equal[s]," Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240 (3d Cir. 2005), but where the question is close, the funding or "state-treasury" factor should remain the "prime guide." Febres, 445 F.3d at 229 (quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 47 (1994)).

The Court finds that no Fitchik factor favors immunity in this case. Indeed, the Court reached the exact same conclusion four years ago when it rejected an identical argument advanced by MSU in another employment dispute. See Ventura v. Montclair State Univ., No. 08-cv-5792 (SRC), 2011 WL 550720 (D.N.J. Feb. 9, 2011). The plaintiff in that case alleged that he was denied a number of promotions on the basis of invidious discrimination, and brought suit under 42 U.S.C. § 1983 and the LAD, among other claims. At summary judgment, MSU argued that it was immune from suit under the Eleventh Amendment as an arm of the State of New Jersey. See id. at *2.

Citing governing Third Circuit and Supreme Court precedent, this Court rejected MSU's argument and found that every Fitchik factor weighed against a finding of immunity. Id. at *2-4

2

(citing, *inter alia*, Bowers, 475 F.3d 524, and Regents of the Univ. of Cal. v. Doe, 519 U.S. 425 (1997)).  Regarding the first factor, this Court reasoned that because a money judgment against MSU would not be enforceable against the State of New Jersey, it was of no moment that funds to pay the judgment might eventually come from the State.  Id. at *2 ("if a state is not under a legal obligation to satisfy a judgment, then any increase in expenditures in the face of an adverse judgment is considered a voluntary or discretionary subsidy not entitled to Eleventh Amendment protections" (citing Bowers, 475 F.3d at 547)).  This Court also found that MSU was a decidedly autonomous entity that was only controlled or supervised by the State of New Jersey to a limited degree.  In particular, the Higher Education Restructuring Act of 1994, N.J. Stat. Ann. §§ 18A:3B-1 to -69, made it readily apparent that the New Jersey legislature sought to "unleash the creativity and innovation of [its institutions of higher education]" by eliminating "unnecessary State oversight" and placing "greater decision making and accountability . . . at the institutional level."  (Id. at *4 (quoting § 18A:3B-2 ("Legislative findings and declarations")).  That is to say, in the parlance of the second and third Fitchik factors, New Jersey state law generally treats MSU as an independent institution, which results in substantial autonomy from the State.  See Christy v. Pa. Tpk. Comm'n, 54 F.3d 1140, 1144-45 (3d Cir. 1995).

On balance, this Court in Ventura found that "the three [Fitchick] factors weigh in favor of finding that the State of New Jersey does not consider MSU to be an arm of the state."  See 2011 WL 550720, at *5.  MSU has not presented persuasive reasons why a different result should obtain now.  MSU does not argue, for instance, that the relationship between itself and the State has changed such that New Jersey would be on the hook for any judgment against the University; all MSU argues is that the State "will inevitably" disburse funds to satisfy judgments

3

against it, and thus "the funding factor is ambiguous." (See Mov. Br. at 12.) This argument remains foreclosed by Bowers and its predecessors. See 475 F.3d at 547; Febres, 445 F.3d at 236; Fitchik, 873 F.2d at 661 ("Although New Jersey might appropriate funds to [New Jersey Transit] to meet any shortfall caused by judgments against NJT, such voluntary payments by the state do not trigger sovereign immunity grounds."). Moreover, MSU remains authorized by statute to receive tuition payments, a source of revenue independent from state funding, and is further authorized keep such moneys and disburse them at its discretion. See N.J. Stat. Ann. § 18A:64-6(e). This alternative source of revenue, which could be used to satisfy a money judgment against the University, weighs against a finding of immunity. See Febres, 445 F.3d at 236-37.

     MSU also does not argue that the legislative relationship between itself and New Jersey has fundamentally changed such that it would appear the State now treats MSU with a greater degree of oversight than before. Nor could the University so argue – the trend towards autonomous operation of State colleges by independent boards of trustees, beginning in 1986 with the State College Autonomy Laws, P.L. 1986, Chs. 42 & 43, and continued in 1994 with the Higher Education Restructuring Act, N.J. Stat. Ann. §§ 18A:3B-1 to -69, has not been reversed. It is still the case, as it was in 2011, that "[t]he board of trustees of a State college shall have general supervision over and shall be vested with conduct of the college," N.J. Stat. Ann. § 18A:64-6; this authority includes the freedom to "[a]dopt and use a corporate seal," set compensation for the college president and other officers and employees, "enter into contracts and agreements with the State or any of its political subdivisions," and "[b]orrow money for the needs of the college, as deemed necessary by the board . . . ." See id. at §§ 18A:64-6(a), (g), (i),

4

(k), and (t).

MSU instead argues that its autonomy from the State has been curtailed by a Reorganization Plan issued by Governor Christie in August 2011, which abolished the seventeen-member Commission on Higher Education and transferred all of its duties to the Secretary of Higher Education. See Reorganization Plan No. 005-2011, reprinted at 43 N.J. Reg. 1625(a). According to MSU, this Cabinet-level reorganization "consolidates Executive Branch oversight over the state colleges," which MSU contends alters an analysis of the second and third Fitchick factors in a way that favors finding immunity. (Mov. Br. at 12.)

But MSU's argument ascribes a meaning to the reorganization not supported by the terms of the Plan itself. The Court understands the Plan to serve a purpose true to its name – a reorganization of the State's executive branch to replace a multi-member governance committee with what the Governor believes will be more efficient and stream-lined management in the hands of a single cabinet-level individual. See 43 N.J. Reg. 1625(a) ("The performance of these obligations and responsibilities can be significantly improved by consolidating the statutory powers and duties of the Commission with those of the Secretary."). This is a far more modest task than vesting the government with greater oversight and control of State colleges, and does not appear to alter the legislative relationship between the State's government and colleges like MSU at all. Indeed, by its very terms the Reorganization Plan does not upset the governing legislative scheme. See id. ("All of the powers . . . exercised by the Commission, including, but not limited to, those powers . . . granted by [the Higher Education Restructuring Act] . . . are continued, transferred to, and vested in the Secretary of Higher Education . . . .").

5

In short, the transfer of oversight responsibilities from the Commission on Higher Education to the Secretary of Education alters internally the manner in which the executive branch oversees State colleges, not the actual legal relationship between the State of New Jersey and those institutions.  As such, what was true in Ventura four years ago remains so today – an application of the Fitchik factors reveals MSU is a relatively autonomous entity that is governed by an independent board of trustees and ultimately overseen by the State of New Jersey.  There is simply not the "overwhelming degree of state involvement," see Bowers, 475 F.3d at 549, such that MSU could be considered an alter ego or arm of the state.[1]

Accordingly,

**IT IS** on this 31st day of July, 2014,

**ORDERED** that the motion to dismiss filed by Defendant Montclair State University [Docket Entry 5] be and hereby is **DENIED**.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

---

[1] In light of this conclusion, MSU's second argument – that Plaintiff's FMLA claim is barred by the Eleventh Amendment because Congress did not abrogate sovereign immunity for that statute's "self-care" provision – is stillborn.  (See Mov. Br. at 14.)

6